IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KENNETH G. THORP,**

      **Plaintiff,**

  v.                                        Civil Action 2:15-cv-1121
                                             Judge George C. Smith
                                             Magistrate Judge Jolson

**OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION, et al.,**

      **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff Kenneth Thorp, a state inmate currently incarcerated at Belmont Correctional Institution ("BeCI") proceeding pro se, brings suit alleging that Defendants acted in violation of his Eighth Amendment rights. For the reasons below, it is **RECOMMENDED** that Defendants Michele Miller and Ryan Clark's Motion for Summary Judgment be **GRANTED in part and DENIED in part.** (Doc. 58).

## I. BACKGROUND

### A. Factual Background

Plaintiff alleges that on March 24, 2014, while returning from his Alcoholics Anonymous meeting, unknown inmates attacked him in an unsecure area of BeCI; an area known as the "mailbox walkway" or "deadman's corner." (Doc. 36 at 4). In his Complaint, Plaintiff depicts the mailbox walkway as follows:

1



The mailbox walkway, according to Plaintiff's map, consists of two intersecting walkways near 7-House, 8-House, IHS and the mailboxes. (Doc 4-3, PAGEID #: 93).

Plaintiff further alleges that prison officials knew there was a substantial risk that Plaintiff or others could be harmed in the mailbox walkway—as the assaults were a known and common occurrence—but prison officials did nothing. (*Id.* at 8). Specifically, as to Defendant Warden Michele Miller, it is alleged that she "was personally aware and well informed of the conditions, circumstances, and events" that occurred in the mailbox walkway. (*Id.* at 2). Additionally, Chief of Security at BeCI, Defendant Ryan Clark, is alleged to have had "longstanding constructive knowledge" of the continuous assaults in the area in which Plaintiff was attacked. (*Id.* at 3). Accordingly, Plaintiff seeks declaratory and monetary relief.

**B.  Procedural Background**

On April 1, 2015, Plaintiff Kenneth Thorp, acting pro se, brought suit under 42 U.S.C. § 1983 against the Ohio Department of Rehabilitation and Correction ("ODRC"), Corrections Director Gary C. Mohr, BeCI Warden Michele Miller, Officer Scott, BeCI Investigators P. Bumgardner and Kelly Riehle, and Major "John Doe" Clark.  (Doc. 4 at 2–5).  Plaintiff alleges Defendants were deliberately indifferent to his safety, security, and well-being in violation of his Eighth Amendment Rights.  (*Id.* at 13).  Magistrate Judge King performed an initial screen of Plaintiff's complaint according to 28 U.S.C. §§ 1915(e) and 1915A on April 17, 2015, and recommended that the claims against the ODRC, Director Mohr, Officer Scott, P. Bumgardner, and Kelly Riehle be dismissed for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.  (Doc. 7).  The District Judge adopted Magistrate Judge King's recommendation on May 27, 2015.  (Doc. 11).

Plaintiff filed a Motion for Leave to File an Amended Complaint on March 28, 2016, to correct the spelling of Michele Miller's name, identify Ryan Clark, who had previously been identified as John Doe Clark, and dismiss the remaining defendants pursuant to the Court's Order.  (Doc. 33).  That Motion was granted.  (Doc. 34).  At this stage, Miller and Clark remain as Defendants.

On September 12, 2016, both Defendants filed a Joint Motion for Summary Judgment. (Doc. 58).  Plaintiff filed his Opposition to the Motion for Summary Judgment on October 21, 2016 (Doc. 63), and Defendants filed their Reply in Support on November 4, 2015.  (Doc. 64).  It is worth noting that Defendants contend that Plaintiff's Opposition was untimely.  (*Id.* at 1, 3–5). Pursuant to the Court's September 22, 2016 Order (Doc. 61), the deadline for Plaintiff's Opposition was October 20, 2016.  However, although Plaintiff's Opposition was docketed with

the Court on October 21, 2016, it is dated October 17, 2016. (Doc. 63). Under the "prisoner mailbox rule," a document filed by a pro se prisoner is deemed "filed" with a court on the date the prisoner delivers the document to prison officials for forwarding to the court. *Brand v. Motley*, 536 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). Accordingly, Plaintiff's Opposition is timely, and the matter is ripe for consideration.

## II. STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see id.* at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that "genuine" amounts to more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

### A. Exhaustion Of Administrative Remedies

Defendants first argue Section 1997e of the Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under Ohio Administrative Code § 5120-9-31, inmates "must follow a three-step grievance procedure." *Troche v. Crabtree*, 814 F.3d 795, 799 (6th Cir. 2016); *see also Willis v. Mohr*, No. 1:11-cv-808, 2013 WL 5773932, at *3 (S.D. Ohio Oct. 24, 2013). Specifically, the PLRA states that:

> Informal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses. Specificity of the complaint provides institutional staff the opportunity to investigate the complaint and to take corrective action to address a valid complaint. In the event an inmate does not know the identity of the personnel involved, a "John/Jane Doe" complaint may be filed.

OAC § 5120-9-31(K). It appears from Plaintiff's grievance record (*see* Doc. 58-1), that Plaintiff filed a complaint against Defendant Warden Miller alleging the date of his attack, the date he spoke to Warden Miller, and his grievance regarding the failure to provide adequately for his safety in an area where inmates are regularly being assaulted. (*Id.* at PAGEID #: 452–54). As such, Plaintiff provided the requisite specificity to allow the staff at BeCI to investigate the complaint and utilize the grievance procedure effectively in accordance with the regulation. *See Curry v. Scott*, 949 F.3d 493, 505 (6th Cir. 2001) (explaining that "the importance of using the prison grievance process is to alert prison officials to problems") (citing *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999)).

Defendants, on the other hand, argue that Plaintiff failed to exhaust his administrative remedies against Defendant Clark since he was not named specifically in the grievance. (Doc. 58 at 5–7). Thus, they argue the lawsuit cannot proceed against him. (*Id.*). In support, Defendants attached the affidavit of Eugene Hunyadi, the assistant Chief Inspector for the ODRC, which states that Plaintiff did not "file[] an ICR or similar grievance against Defendant Ryan Clark for the claims that are at issue in this lawsuit." (Doc. 58-2 at 4). However, the Supreme Court held in *Jones v. Bock*, "that the PLRA requires exhaustion of such administrative remedies as are available but nothing in the statue imposes a 'name all defendants' requirement." 549 U.S. 199, 217 (2007). In reaching that decision, the Court reasoned that "[n]othing in the [Michigan Department of Correction] policy itself supports the conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process." *Id.* at 218. Nothing in the Ohio Administrative Code Policy supports that conclusion either. *See Dotson v. Wilkinson*, 477 F. Supp. 2d 838 (N.D. Ohio 2007) (despite a prisoner's grievance containing the name of only one named defendant, the court held that "[t]he three step grievance process detailed in Ohio Administrative Code 5120-9-31, does not specifically require an inmate to name someone in the grievance").

Consequently, the Undersigned finds Plaintiff appropriately exhausted his potential administrative remedies against both Defendants, and recommends **DENYING** this portion of Defendants' Motion.

B. **Official Capacity Claims**

As to the next claim, Plaintiff is suing Defendant Miller and Defendant Clark in both their official and individual capacities pursuant to 42 U.S.C. § 1983. (Doc. 36 at 2–3).

6

However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." And as the Supreme Court has long held, the Eleventh Amendment prevents a federal court from entertaining a suit brought by a citizen against his own state, unless that state waives its immunity. *Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *Wolfel v. Morris*, 972 F.2d 712 (6th Cir. 1992). The State of Ohio has not waived its immunity in this case, and thus, Plaintiff cannot maintain a suit for damages against either Defendant in his or her official capacity. Accordingly, the undersigned recommends **GRANTING** this portion of Defendants' Motion.

**C. Qualified Immunity**

Defendants have also pleaded, although minimally, the affirmative defense of qualified immunity. (Doc. 58 at 9); *Mingus v. Butler*, 591 F.3d 474, 479 (6th Cir. 2010) ("Qualified immunity is an affirmative defense that must be pleaded by a defendant official.") (quotations omitted). Indeed, Defendants' argument for qualified immunity is just two sentences in their Motion for Summary Judgment: "At this time, Defendants contend that Plaintiff can produce no evidence that defeats their entitlement to qualified immunity in this case. Defendants contend that this is particularly true as to Defendant Clark." (*Id.*).

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two competing interests— "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Richko v. Wayne Cty*, 819 F.3d 907, 914 (6th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In determining whether Defendants Clark and Miller are entitled to qualified immunity, the Court considers (1) whether Plaintiff has shown that a constitutional violation occurred, and (2) whether the right was clearly established at the time of the violation. *See id.* (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). Courts have discretion in deciding which of the two prongs to address first. *Stoudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 567–68 (6th Cir. 2013).

### 1. Whether The Right Was Clearly Established

"In evaluating whether a constitutional right was clearly established, '[t]he key determination is whether a defendant moving for summary judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional.'" *Stoudemire*, 705 F.3d at 568 (citing *Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir. 2009)). It has been noted many times that while "[t]he Constitution does not mandate comfortable prisons, [] neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). Accordingly, prison officials must "take reasonable measures to guarantee the safety of inmates." *Udson v. Palmer*, 468 U.S. 517, 526–27 (1984).

This Circuit has found that prison officials are on notice that deliberate indifference in failing to implement reasonable measures of safety to protect inmates from assault is

8

unconstitutional.  *See Richko*, 819 F.3d. at 915 (holding that Plaintiff's constitutional "right to be free from violence at the hands of other inmates [] was clearly established by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994))."  In articulating this holding, the *Richko* Court relied on the Supreme Court's holding in *Farmer*:

> *Farmer* held that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners" because corrections officers have "stripped them of virtually every means of self-protection and foreclosed their access to outside aid." *Id.* at 833, 114 S.Ct. 1970 (ellipsis and internal quotation marks omitted); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir.1998) ("Without question, prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners.").

*Id.*

Accordingly, Plaintiff's right to be free from deliberate indifference leading to his assault is clearly established.  *See Hansen v. Dir., O.D.R.C.*, No. 2:12-CV-773, 2014 WL 1653124, at *4 (S.D. Ohio Apr. 24, 2014), *report and recommendation adopted*, No. 2:12-CV-773, 2014 WL 2117083 (S.D. Ohio May 21, 2014) ("An inmate's right to be free from violence at the hands of other prisoners is well established."); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990) ("On several occasions, we have held that 'deliberate indifference' of a constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another."); *Velez v. Johnson*, 395 F.3d 732, 736 (7th Cir. 2005) ("[W]e believe it is plainly the right [of an inmate] to be free from deliberate indifference to rape and assault. There can be no debate that this right was clearly established at the time"); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319–20 (11th Cir. 2016) ("[T]he Supreme Court has made clear that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'").

9

### 2. Whether A Constitutional Violation Occurred

In terms of a constitutional violation, Plaintiff alleges that Defendants were deliberately indifferent "in regard to [his] assault and the ongoing condition" at the prison "that exposed [him] and many others to an unreasonable risk of serious harm." (Doc. 36 at 6). However, "[i]t is well established that [although] a pro se litigant may represent himself on his own claims, [he] may not act in a representative capacity." *Garrison v. Mich. Dept. of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009). Accordingly, the Court considers only whether Defendants' actions constituted deliberate indifference to a substantial risk to Plaintiff himself.[1] With this in mind, Plaintiff must satisfy both an objective and subjective component to demonstrate a constitutional violation occurred. *See Richko*, 819 F.3d at 915; *Morgan v. Lamneck*, No. 2:09-cv-218, 2011 WL 1114415, at *4 (S.D. Ohio Mar. 24, 2011) (holding that "the test for deliberate indifference contains both a subjective and an objective component").

### i. Plaintiff Has Satisfied The Objective Prong As To Both Defendants

To satisfy the objective component, Plaintiff must demonstrate that he was "exposed to a substantial risk of serious harm." *Richko*, 819 F.3d at 915; *see also Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). However, as one Court recently noted, "[t]here is some tension in Sixth Circuit case law on how to frame [the] objective inquiry." *Holder v. Saunders*, 13-38-ART, 2014 WL 7177957, at *5 (E.D. Ky. Dec. 2014). "In one set of cases, the court looks only at whether the inmate suffered a sufficiently severe injury" and in other cases, "the Sixth Circuit examines whether there was an objectively substantial risk of harm to the inmate before the injury occurred." *Id.* (citing *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Bishop*, 636 F.3d

---

[1] Plaintiff provides evidence in the form of affidavits, investigation reports, and conduct reports of numerous attacks in the mailbox walkway that occurred after his attack on March 24, 2014. However, in order to determine whether Defendants were deliberately indifferent to Plaintiff's safety, rather than indifferent to other inmates later attacked, the Court considers only the evidence prior to Plaintiff's attack.

at 766)). However, as was the case in *Holder*, the Court need not resolve the inconsistency because Plaintiff succeeds under either inquiry. *Id.*

Here, Plaintiff suffered a severe injury—he was knocked unconscious, suffered a concussion, lacerations in the lip, chin and left eyebrow, as well as abrasions to his nose and jaw. *See Curry*, 249 F.3d at 506 (holding that "being beaten without cause" was "sufficiently serious to fulfill the objective component"). Plaintiff was transported to East Ohio Regional Hospital (Doc. 39-3, PAGEID #: 362), where he received stitches and was diagnosed with a concussion. (Doc. 36). These injuries could undoubtedly be viewed by a jury as sufficiently severe. Defendants, having not mentioned a subjective or objective prong in their briefing, did not argue against Plaintiff's injury being sufficiently severe.

As to the risk of harm before the attack, and viewing the facts in the light most favorable to Plaintiff, the "mailbox walkway area" posed a substantial risk of serious harm. *See Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (to satisfy the objective prong, "[t]he inmate must show that 'he is incarcerated under conditions posing a substantial risk of serious harm'") (citing *Farmer*, 511 U.S. at 833). "In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency." *Cunningham v. Ward*, No. 07-2648-B/P, 2007 WL 4209093, at *3 (W.D. Tenn. Nov. 27, 2007) (citing *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

Of the incident and conduct reports in the record during the year leading up to Plaintiff's attack, seven of the ten reports depict attacks in the mailbox walkway and all but one occurred between the hours of 6:30 p.m. and 8:10 p.m., meaning likelihood of an attack in this area during

11

that time frame was probable. (Doc. 63-1, PAGEID #: 502–08; Doc. 63-2, PAGEID #: 519–22). Of the inmates that were attacked, the seriousness of the harm was great: one inmate was transported by ambulance "due to severe facial and head trauma (Doc. 63-1, PAGEID #: 503); another inmate was transported by ambulance after being found with his "right eye swollen shut, blood coming from [his] nostrils" (*id.* at PAGEID #: 504); and one inmate "suffered injuries resulting in a month long hospital stay" (*id.* at PAGEID #: 505). "Viewing this evidence in the light most favorable to [Plaintiff], genuine issues of material fact remain" as to whether this area posed an objectively substantial risk of harm to inmates that accessed it at night. *See Bugge v. Roberts*, 430 F. App'x, 753, 759 (11th Cir. 2011) (reversing district court's finding in favor of defendant's summary judgment motion because, among other things, there was evidence that inmate-on-inmate violence occurred regularly). Again, Defendants do not discuss, or deny, the substantial risk of violence in the mailbox walkway area.

### ii. Plaintiff Has Satisfied The Subjective Prong As To Both Defendants

Under the subjective component, "the court examines the defendant[s'] state of mind to determine whether [they] acted with 'deliberate indifference.'" *Sexton v. Neil*, No. 1:14cv26, 2014 WL 6453771, at *5 (S.D. Ohio Nov. 17, 2014). A plaintiff meets this by showing:

> (1) the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner, (2) the official did in fact draw the inference, and (3) the official then disregarded that risk. Because government officials do not readily admit the subjective component of this test, it may be demonstrated in the usual ways, including inference from circumstantial evidence.

*Richko*, 819 F.3d at 915 (internal citations and quotation marks omitted); *see also Farmer*, 511 U.S. at 837. It is worth noting that Plaintiff "need not demonstrate Defendants' deliberate indifference to *his* safety; instead, he must demonstrate that despite awareness of the danger" in the mailbox walkway, Defendants did nothing. *See Morgan*, 2011 WL 1114415, at *5 (emphasis in original) (citing *Farmer*, 511 U.S. at 842).

12

Additionally, when there are multiple defendants asserting qualified immunity, as is the case here, "the court should consider whether each individual defendant had a sufficiently culpable state of mind." *Phillips*, 534 F.3d at 542. Accordingly, the Court considers whether the facts construed in the light most favorable to Plaintiff, show that Defendants Miller and Clark had a "sufficiently culpable state of mind" to satisfy the subjective component. *Farmer*, 511 U.S. at 834.

First, both Miller and Clark admit to receiving reports of every inmate assault at BeCI. Defendant Miller explained that "[c]ommunications come to me for any acts of violence with injuries through verbal communications if I am 'on grounds.' If I am not on grounds, I am either contacted by phone, email, or incident report." (*See* Doc. 63-8, PAGEID #: 537). Defendant Clark explained that he receives "a shift report at the completion of each shift, which would include a summary or brief narrative of the shift's activities."). (Doc. 63-10, PAGEID #: 547). Defendant Clark additionally admitted that he "had knowledge that assaults had taken place in this [mailbox] area of the institution prior to the incident of March 24, 2014, involving Plaintiff." (Doc. 63-11, PAGEID #: 550). Accordingly, although Defendants seem to argue they were not aware of what was going on in the mailbox area (Doc. 58 at 8), it is undisputed that both Defendants were informed of each attack that occurred there. *See Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] prison official may 'not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'") (citing *Farmer*, 511 U.S. at 843, n.8).

In regards to whether Defendants actually drew the inference, it is instructive that in the year leading up to Plaintiff's attack, fifty-five inmate assaults occurred. (Doc. 39-5, PAGEID #:

13

340–42). Of those fifty-five assaults, incident and conduct reports or summaries are included in the record for ten. As noted above, seven of the ten reports depict attacks in the mailbox walkway, or 70% of all attacks. (Doc. 63-1, PAGEID #: 502–08; Doc. 63-2, PAGEID #: 519–22). Because the other incident reports or investigative summaries were not produced,[2] the Court proceeds with its analysis assuming that 70% of all attacks at BeCI happened in the mailbox walkway area. The Supreme Court in *Farmer* held that:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

511 U.S. at 842–43 (internal quotation marks omitted). As discussed above, the inmate attacks in the mailbox walkway were longstanding, pervasive, well-documented, and both Defendants had the information regarding the attacks. Moreover, an affidavit submitted by another inmate who was attacked on September 21, 2012, stated that "[m]any people are attacked in this area of the yard." (Doc. 1-5, PAGEID #: 51). This is enough to permit a trier of fact of find that both Defendants had *actual* knowledge of the risks and thus drew the inference. *See Farmer*, 511 U.S. at 842–43; *see also Hamilton v. Eleby*, 341 F. App'x 168, 172 (6th Cir. 2009) (holding that "[a] jury could certainly find . . . that [Defendant] was aware of facts from which he could have inferred that [Plaintiff] faced a substantial risk of serious harm); *Smith v. Leyba*, No. 07-cv-

---

[2] On May 23, 2016, Plaintiff filed a Motion to Compel discovery seeking, *inter alia*, Incident Report Forms and Investigative Summary Reports that corresponded to an incident chart BeCI had already produced. (*See* 39-5, PAGEID #: 338-39; Doc. 45 at 1). Despite Defendants arguing the reports and summaries were irrelevant and overly burdensome to produce (Doc. 43), the Court granted that Motion in part and directed Defendants to produce any reports or investigative summaries associated with the incidents in question. (Doc. 45 at 1). Defendants filed a notice of compliance with that Order on August 2, 2016. (Doc. 46). Despite the notice, Plaintiff alleged there were 85 missing incident reports and only 5 investigator summary emails were produced out of a possible 157 incidents. (Doc. 49 at 2). However, Defendants represented, and submitted an affidavit from a BeCI employee responsible for the compilation of the discovery-related documents stating the same, that all incident reports and investigative summaries found were turned over. (Doc. 54 at 1–2).

14

02589, 2009 WL 564270, at *2 (D. Colo. Mar. 5, 2009) (holding that "a showing that the risk of inmate attacks was longstanding, pervasive, and well documented, coupled with circumstances suggesting that the official had been exposed to information concerning the risk and thus must have known about it would be sufficient" to infer subjective knowledge of the risks).

Finally, even if [Defendants] drew the inference that [Plaintiff] faced a substantial risk of serious harm, [] [they] may be found free from liability if [they] responded reasonably to the risk." *Hamilton*, 341 F. App'x at 172 (citing *Farmer*, 511 U.S. at 844). However, neither Defendant offered any evidence that they took action to eliminate or respond in any way to the risk. Through discovery, Plaintiff attempted to uncover any such actions that Defendants might have taken to respond to the risk, but the discovery available to him only confirmed nothing was done. For example, Defendant Miller never issued any directive to increase security in that area at any time (*see* Doc. 63-8, PAGEID #: 540), and when asked what steps were taken to curb the attacks in the area, Defendant Clark cited measures implemented in March 2015, but nothing prior to Plaintiff's attack. (*See* Doc. 29-2, PAGEID #: 229). With this in mind, Plaintiff has made a sufficient showing that both officials perceived facts from which they could draw the inference that substantial risk to prisoners existed in the mailbox walkway and did nothing to remedy the situation. *See Comstock*, 273 F.3d at 709–10 (holding that because of Defendant's "failure to conduct *any* investigation into" the perceived risk, a jury could conclude his actions (or lack thereof) constituted deliberate indifference) (emphasis in original).

Finally, it is also worth noting that Defendants submitted no evidence, in the form of affidavits or otherwise, to support their qualified immunity claim. As was mentioned above, Defendants' entire qualified immunity argument in their Motion for Summary Judgment was articulated in two sentences. Although Defendants' Reply contained a slightly more robust

15

discussion on qualified immunity, instead of rebutting Plaintiff's assertions, Defendants simply repeated the idea that Plaintiff had failed to show why they were not entitled to qualified immunity. (Doc. 64 at 9–10). However, "[w]ith no contrary evidence having been filed by Defendants, the Court is left with Plaintiff's allegations," which at this point remain uncontradicted on the record and support denying qualified immunity. *Jordan v. Woods*, No. 1:10-cv-598, 2012 WL 1805491 (S.D. Ohio April 2, 2012).

## IV.  CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Defendants Michele Miller and Ryan Clark's Motion for Summary Judgment be **GRANTED in part and DENIED in part.** (Doc. 58).

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

      IT IS SO ORDERED.

Date: February 17, 2017             /s/ Kimberly A. Jolson
                                                           KIMBERLY A. JOLSON
                                                           UNITED STATES MAGISTRATE JUDGE